## CITY OF CHAMPAIGN
### v.
## SILAS WHITE.

*Municipal Corporations—Personal Injury—Negligence of Street Super-intendent—Instructions.*

Upon the case presented it is *held:* That the jury were justified in find-ing that defendant's superintendent of streets did not use due care in noti-fying plaintiff (a deaf person) of danger impending from operations being carried on in the street where plaintiff's team was hitched.

[Opinion filed September 20, 1890.]

APPEAL from the Circuit Court of Champaign County; the Hon. E. P. VAIL, Judge, presiding.

Messrs. SOLON PHILBRICK, M. W. MATHEWS and E. L. SWEET, for appellant.

Mr. FRANCIS M. WRIGHT, for appellee.

CONGER, P. J.    This was an action brought by White against the city of Champaign for injuries to himself and his team, caused by such team being frightened and running away in the streets of said city. Appellant, by its superintendent and workmen, for about one week prior and up to October 2, 1886, had been engaged in putting in a sewer on First street in said city, and upon that day appellee drove his team into the city and hitched them on First street, at the side of the street and near to the place where appellant's servants were working, and went off to another part of the city in attend-ance upon the business that brought him to the city. About the time, or shortly afterward, he returned to his team (and upon this point the evidence is conflicting) the superintendent desired to flush the place in the center of the street with water in order to settle the loose dirt, and to do this had a hose attached to a hydrant near by. There were two men

in charge of the nozzle of the hose, and at first the water was thrown south to a point in the center of the street where the catch basin was, and when the water began to run into the catch basin where men were at work, those holding the nozzle undertook to turn the stream of water north, or in an opposite direction, and in doing so, partially lost control of the hose and sent the water against the store building, by the side of which the team was standing, and appellee insists the stream struck the fore part of the wagon.

Appellee was in front of his horses trying to hold them, but could not. They ran away, throwing appellee under the wagon, and he was seriously injured. Appellee, below, recovered a verdict and judgment for $500. The evidence is quite voluminous, and there are many circumstances and details to which we have not referred in the foregoing statement.

The controlling question before the jury was whether the city, through its superintendent of streets and workmen, was guilty of negligence in not giving appellee sufficient notice of their intended use of the water, and reasonable time to get his team away.

Appellee was somewhat hard of hearing, and claims that he did not hear the warning given by the superintendent, while the latter insists that, a reasonable time before ordering the water turned on, he gave notice, in a voice loud enough to be heard by any one with good hearing, to remove all teams from the place. The jury found, upon the following special interrogatories submitted to them, in the affirmative, as to both:

" Did Hanford give notice to clear the street in a tone of voice loud enough for the plaintiff to have heard him if he had been a person of ordinary good hearing, and, if so, could the plaintiff, by the use of ordinary diligence, have removed his team from danger from water thrown, as alleged ?"

" Was not the manner of the plaintiff, as stated by Hanford when he says he personally notified the plaintiff to remove his team, sufficient to induce a reasonable man to believe he was deaf and did not hear what he said ?"

City of Champaign v. White.

These special findings indicate the view taken by the jury, and which, we think, is fairly supported by the evidence, *i. e.*, that while Hanford, the superintendent, did give such notice as would have been sufficient to persons ordinarily, yet appellee's manner, when the superintendent went to him and personally notified him, was such as to fairly apprise Hanford that appellee was deaf, or for some reason did not understand the notice or the situation.

No matter what public notice the superintendent gave, if, when he went to appellee and told him to get away, there was sufficient in the conduct of appellee to induce Hanford, as a reasonable and ordinarily prudent man, to believe that appellee either did not hear or did not understand his warning, and was therefore taking no precautions for safety because he did not see the necessity of so doing, and not from indifference or recklessness, we think the superintendent would be negligent in not ascertaining the cause of appellee's apparent indifference before ordering the water turned on.

The court gave to the jury, at the request of appellant, the following instruction:

"6. The court instructs the jury that if you believe from the evidence that the plaintiff was deaf or hard of hearing, then it was the duty of the plaintiff to use extra precaution and care to equalize this defect in transacting business where it is essential one should exercise the sense of hearing."

This instruction is very favorable to appellant, and, while it is true as a general proposition, whether it would be good law as applied to a case like the present, where appellee was upon the streets of a city and the danger arose not from those things ordinarily to be expected and avoided, but from an extraordinary danger occasioned by the city, it is not necessary to determine.

But appellant had the advantage of it, and the jury have found, after requiring of appellee this extra precaution and care, that Hanford was negligent, because he knew, or might have known as a reasonable man, that for some cause appellee was ignorant of his danger, and of the orders given for the removal of his team.

Some of the instructions given are faulty, especially those in reference to closing and guarding the streets while the work was being done, but as that point was immaterial, we can not believe they misled the jury or harmed appellant. As before stated the vital point in the case was whether the superintendent was negligent in not . properly notifying appellee.

The jury have found that under all the circumstances of the case he was, and upon this question the law was fairly and fully given to the jury, and we think the judgment of the court below should be affirmed.

*Judgment affirmed.*